## Hensley et al. v. Commonwealth.

(Decided March 2, 1934.)

C. B. SPICER and F. M. JONES for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID **C.** WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing.

Enos Hensley and James Hensley were indicted in the Harlan circuit court, charged with the murder of

Oscar Smith. On the trial of the case they were found guilty of manslaughter. Enos Hensley's punishment was fixed at ten years in the penitentiary and the punishment of James Hensley at fifteen years. They appeal.

Oscar Smith was a first cousin of James and Enos Hensley, and they all lived not far apart in Harlan county. They were all three about 25 years of age. So was Alfred Long, who had married a sister of Oscar Smith and was temporarily at Squire Smith's house, father of Oscar. Long and Oscar Smith, on the Sunday the trouble occurred, were going around the neighborhood on some business matters. They finally reached the home of James Hensley, who lived near the road, and after some talk with him went on to a fodder stack a short distance away where Enos Hensley was tying up fodder. After staying there some time the three left the fodder stack. According to the proof for the commonwealth, Enos Hensley was drunk, and said, "Alfred I want $5.00, I am going to have it." Long gave him $1, and they started walking toward the road. About the time they got in the road, James Hensley came up and in some way or other Enos slipped and fell, threw his pistol up the hill and the shotgun down the hill. Long picked them up and said to James, "Enos is drunk, come on Enos let's go back to the house," and they all started walking back. He gave James the gun. When they got to the mouth of the hollow, where the road turned off, Enos said "Stop" and again demanded the $5. They went on. Long looked back and saw Enos coming with the Luger pistol and James with the shotgun. Long started walking fast, got ahead of Oscar. Enos ran on his left side and grabbed his coat, shoved the pistol in his stomach. He grabbed the pistol with his left hand and at this instance James Hensley shot him. When James shot, he turned the gun on Oscar Smith and fired on him, killing him.

On the other hand, the proof for James Hensley, in brief, is that Oscar Smith and Alfred Long had a quart of whisky, and when they reached James Hensley's they wanted him to drink with them, but he declined. They then went over to Enos at the fodder stack and stayed there drinking with Enos about an hour and a half. In the meantime they had a shooting match at a rock on the side of the hill, and after the shooting match the

three started from the fodder stack to the road, Oscar Smith holding Enos by one arm and Alfred Long by the other. James Hensley was at home, and his wife called his attention to the way they were treating his brother. He went over to them at the road. When he reached them, they were about twenty-five steps up the hollow after turning off from the road. Long was beating Enos, with a shotgun, over the head. Long had hit Enos and knocked him down and he was trying to get up. When James came up he grabbed the gun and jerked it out of Alfred Long's hand. Long then drew his knife, and James said, "Alfred, don't do that." Alfred then struck Enos, who was lying down, with the knife, and when he did this James shot him with the shotgun. When this occurred Oscar Smith, who then had the Luger pistol which belonged to Enos Hensley, shot at James Hensley, and, the shot missing him, he went after another pistol which he had in his pocket. When he did this James, to save his own life, fired at Oscar Smith, killing him. The shot that struck Long did not inflict a serious wound, but Smith died there on the ground.

Enos testified that Smith and Long were both drunk when they came to him at the fodder stack. When they left he asked them to go home with him to supper. Long replied, "This is one time you have got to go with us, get him Oscar." Oscar took him by the left arm and got his pistol out of his left pocket. Long had his shotgun, and said, "We will take you any way." When they reached the mouth of Sheep Hollow he sat down and would not go any further. Long said, with an oath, "You have got to go," and hit him in his mouth with his fist. Then he raised up, and long punched him, with the shotgun, on the nose, breaking his nose and making it bleed. He ran a few steps, and Long hit him in the side with the shotgun, also on the top of the head, and knocked him crazy. Nobody else was there but Oscar Smith. About this time James came up and took the gun out of Long's hand. Long jerked out his knife and stabbed Enos with the knife; then James shot Long. Long ran off, and Oscar Smith, who had Enos' Luger pistol, then shot at James, and James shot Oscar with the shotgun. When Smith's body was found, he had in his pocket a .38 pistol, which had not been discharged, and, according to the proof for the defendants, the Luger pistol was found near Smith's body after the dif-

174

ficulty. The proof as a whole leaves no room for doubt that Smith, Long, and Enos Hensley were all very drunk and that Enos' nose was broken, his head cut, and his eyes bruised. James Hensley had drunk no whisky and was unarmed. Enos had the shotgun and the pistol at the fodder stack to shoot game after he quit work. The parties had been friendly and on good terms until then.

As will be seen, the case for James Hensley turned on the right of self-defense or defense of his brother. The court by his instruction on self-defense, in substance, told the jury that, if it was necessary or was believed by the defendants in the exercise of reasonable judgment to be necessary to shoot and kill the deceased and aid or abet the other in so doing in order to protect themselves from such danger, real or to the defendants apparent, then they ought to acquit the defendants on the grounds of self-defense.

The instruction was plainly erroneous in that it required the jury to convict both of the defendants or to acquit both of them. James Hensley could not be convicted if he shot Smith in his necessary self-defense, although Enos was to blame in the difficulty, and, on the other hand, if, as Enos' evidence tends to show, he was lying on the ground in a helpless condition when James Hensley shot Smith and said nothing and did nothing, he is not responsible for James shooting Oscar Smith. The instruction as given did not properly protect the rights of the defendants and on the evidence the court should have given the jury this instruction:

4. (a) Although you may believe from the evidence to the exclusion of a reasonable doubt that the defendant James Hensley shot and wounded the deceased with a shotgun so that he presently died thereby, yet, if you should believe from the evidence that at the time James Hensley shot and killed Oscar Smith, if he did so, James Hensley believed and had reasonable grounds to believe that he or Enos Hensley was then and there in danger of death or some great bodily harm about to be inflicted on him or Enos Hensley by the deceased, Oscar Smith, or Alfred Long, and it was necessary or was believed by him (James Hensley) in the exercise of reasonable judgment, to be necessary to shoot and kill the deceased in order to protect himself or Enos Hensley from such danger, real or to James

Hensley apparent, then you ought to acquit him on the ground of self-defense or the defense of another or apparent necessity therefor.

(b) If you shall believe from the evidence that Enos Hensley aided, abetted, or advised the shooting of Oscar Smith, but did so believing and having reasonable grounds to believe that he was then and there in danger of death or some great bodily harm about to be inflicted on him by the deceased, Oscar Smith, or Alfred Long, and it was believed by the defendant Enos Hensley in the exercise of reasonable judgment to be necessary to aid and abet James Hensley to shoot and kill the deceased in order to protect himself from such danger, real or to him (Enos Hensley) apparent, then you ought to acquit Enos Hensley on the ground of self-defense or the apparent necessity therefor.

(c) If you shall believe from the evidence that Enos Hensley aided and abetted or advised the shooting of Oscar Smith by James Hensley, but did so believing and having reasonable grounds to believe that James Hensley was then and there in danger of death or some great bodily harm about to be inflicted on James Hensley by the deceased, Oscar Smith, or Alfred Long, and it was believed by the defendant Enos Hensley in the exercise of reasonable judgment to be necessary to aid and abet James Hensley to shoot and kill the deceased in order to protect James Hensley from such danger, real or to Enos Hensley apparent, and such shooting and killing of the deceased, Oscar Smith, by James Hensley was under such circumstances as under paragraph (a) of these instructions justified James Hensley in such shooting and killing, then you ought to acquit the defendant Enos Hensley on the ground of the defense of another or the apparent necessity therefor.

A mass of testimony was introduced as to the conduct of Enos Hensley after the shooting and after other persons arrived and took Smith's dead body away. This evidence, in any view of it, was only competent against Enos Hensley and on the objection of James Hensley to it the court should so have instructed the jury.

Loyd Fowler was a witness for the commonwealth. He was passing along the road and saw the men standing there at the mouth of the hollow. His testimony was not otherwise important, but much space was taken up with an effort to prove that Enos Hensley had pro-

cured Loyd's father to send him to West Virginia. While this evidence was competent against Enos Hensley, it was not competent against James Hensley, and the court should have so told the jury.

Minerva Long was introduced by the commonwealth and testified, over the defendant's objection, that Enos, about three weeks before the homicide, said in her presence, "If I had some way to get James Hensley out of the land and them damn Smiths out of the hollow I would be all right." This was not a threat against Oscar Smith. As shown by the witness, Enos was drinking, and it was just a drunken man's idle talk and should have been excluded.

It is earnestly insisted that a peremptory instruction should have been given for Enos Hensley. But while it is not shown that he said anything after James Hensley appeared on the scene, he was in a fight with Long, and this fight with Long continued until Long was shot and Smith was shot. The whole transaction, perhaps, did not take over a minute. Aiding and abetting may not only be done by words but by acts, and the question was properly left here to the jury. Smith and Long held Enos by the arms and brought him there.

There is much complaint that in the closing argument the prosecuting attorney made improper statements to the jury. While the bill of exceptions shows that the defendants' counsel objected to these statements, it does not show that the court made any ruling or that any exception was taken by the defendant to the action or nonaction of the court. In order to present this matter here, there must not only be an objection to what is said, but there must be an exception to the ruling of the court. However, on another trial all statements of facts not shown by the evidence should be omitted by the attorney in the closing argument.

Upon the whole case and in view of all the facts the court concludes that the defendants' substantial rights were prejudiced by the errors occurring on the trial and that upon the whole case a new trial should be granted.

Judgment reversed, and cause remanded for further proceedings consistent herewith.